**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**EL DORADO DIVISION**

| | |
|---|---|
| ROMONA TOLBERT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PEAK FOOTWEAR, LLC,<br><br>Defendant. | Case No.: 1:26-cv-01051<br><br>**CLASS ACTION COMPLAINT**<br><br>**(DEMAND FOR JURY TRIAL)** |

Plaintiff Romona Tolbert brings this action on behalf of herself, and all others similarly situated, and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through her attorneys, as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant Peak Footwear LLC, ("Defendant" or "Peak") arising from its deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browse products on the Peak website, Peak will advertise the price of its retail items, along with an advertisement for either free or paid shipping dependent on the dollar value of items purchased. Those pricing representations are false, however, because Peak surreptitiously adds junk fees to consumer purchases on top of free or paid shipping in the form of a so-called "Peak Footwear Shipping Protection" fee.

3. As discussed in detail herein, the assessment of these Peak Footwear Shipping Protection fees is deceptive and unfair, since: (a) Peak automatically adds these fees into consumers' shopping carts; (b) the fees are nothing more than an additional empty cost for shipping, rendering retailer promises for "free" or paid shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiff, who would not knowingly choose to pay them, absent Defendant's deception.

4. Thousands of e-commerce customers like Plaintiff have been assessed hidden shipping charges for which they did not bargain due to Peak's deceptive tactics.

5. By unfairly obscuring its true shipping costs, Defendant deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do not assess such a fee.

6. Plaintiff seeks damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

## PARTIES

7. Plaintiff Romona Tolbert is a citizen and resident of El Dorado, Arkansas.

8. Defendant Peak Footwear LLC is headquartered in New Castle, Delaware. Peak integrates the Shopify shopping platform that offers various widgets for e-commerce websites.

## JURISDICTION

9. This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendant.

## VENUE

10. Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1391 because Plaintiff resides in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. Peak Surreptitiously Adds Fees to Consumers' Carts

11. Upon information and belief, when a consumer views and selects an item on the Peak website to purchase goods, the consumer is shown the price of the particular item without reference to any additional shipping or shipping protection fees.

12. Here's how Peak's deception works. When a consumer views an item on the Peak website, the consumer is shown the price of an item being considered for purchase as illustrated below.




13. When a consumer adds an item to his or her online shopping cart on the Peak website, the consumer can see the selected merchandise at the price previously viewed with a disclosure to the consumer informing the customer "You've unlocked Free Shipping!"




14. Once the customer proceeds to checkout the purchase of the selected merchandise, it is only then the customer is first presented with a pre-selected "Peak Footwear Shipping Protection" fee in the among of $4.95, a fee that contradicts the free shipping promised to the customer in the preceding screen.



15. The Peak Footwear Shipping Protection Fee initially appears as a mandatory fee and it is only when the customer scrolls down the checkout screen to submit payment information that the customer may even be able to discern that the pre-selected Peak Footwear Shipping Protection fee is indeed optional.

16. If a customer elects to pay for Peak merchandise via "Express Checkout" at the top of the checkout screen, the customer may very well not scroll to the bottom of the checkout screen to come across the overview of the Peak Shipping Protection Fee.






17. Nor is it entirely clear that the Peak Footwear Shipping Protection fee is even optional since there is nothing in the overview of the shipping protection fee that explicitly informs the customer that the fee is optional and is removeable from the shopping cart.

18. If the consumer fails to opt out of the Peak Footwear Shipping Protection fee, the same free or any applicable shipping fee applies but now the Peak junk fee is foisted on top of the actual shipping fee.

19. Upon information and belief, these purported shipping protection benefits are already available to most consumers without having to incur the Peak Footwear Shipping Protection fee.

20. At the time Plaintiff and the putative Class members made their purchases, the Peak Footwear Shipping Protection Fee is engineered to be a default addition to the consumer's cart. The opt-out option is intentionally designed to be presented as subtle so as to go unnoticed by consumers as illustrated herein and engineered to force consumers to affirmatively opt-out of the junk fee in order to avoid it.

21. Thus, if consumers even notice a fee added to their transactions, consumers must still proactively remove the junk fee from their shopping cart.

22. This pre-selection and automatic opting in of consumers to junk fees is itself deceptive.

23. Upon information and belief, Peak utilizes a widget on the Shopify platform for this purpose. That widget automatically presents the junk fees like the "Peak Footwear Shipping Protection Fee" as the default option to all orders. This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to Peak.

24. The Wall Street Journal highlights the problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process.***

Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall Street Journal, December 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

25. As the FTC notes, "For years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* September 15, 2022 (available at: https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

26. The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf Fn. 46 at pg. 13 (emphasis added).

## II. The Add On Fees Render Promises of Free or Flat Rate Shipping False

27. Even beyond the deceptive manner in which the fees are added, the fees themselves are additionally deceptive because they directly contradict other promises on Peak's website regarding "free" or other actual shipping charges. That is because Peak's add-on fees are, in actuality, a disguised shipping and return charge and add no benefit to the consumer beyond what they would already receive from the merchant.

28. Whatever the Peak Footwear Shipping Protection fee is for—and as described

herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers and any returns or exchanges that a consumer may undertake.

29. But as described herein, Peak promised “free” shipping on orders. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the “free” shipping price promise.

30. However, Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

31. Defendant was or should have been aware that consumers were and would be deceived by an add-on shipping fee at the same time as a promise of “free” shipping was being made.

32. Because it is well known that consumers prefer free and transparently clear shipping costs, Defendant made an intentional decision to break shipping costs into two parts and thus disguise its decision to charge more for shipping through deceptive add-on Peak Footwear Shipping Protection Fees.

33. The deceptively added Peak Footwear Shipping Protection Fee is a hidden shipping fee. This undercuts and renders false Peak’s promise of free shipping.

34. By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

35. In addition to the manner in which the fees are added and the fact that the added fees render other “free” shipping promises false and deceptive, Defendant’s fees are nonsense fees that provide little or no value to consumers.

## III. Defendant’s “Peak Footwear Shipping Protection Fee” Is Inaccurately Named and Described and Provides No Added Value to Consumers

36. Even beyond the deceptive manner in which the fees are added and the fact that the fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or clearly disclosed paid shipping costs, the Peak Footwear Shipping Protection fees are also deceptively named and described.

37. Defendant's fee provides little or no "expedited" or *additional* "coverage" for shipments than already exists. Many online merchants already provide replacements and allow for returns and exchanges of products. Therefore, the Peak Footwear Shipping Protection fee provides no extra protection for goods that arrive damaged. Defendant misrepresents, and omits material facts about, that truth.

38. Moreover, popular shipping services like UPS, Federal Express, USPS Priority Mail *automatically* include insurance for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the Peak Footwear Shipping Protection Fee is entirely worthless, because they are already provided the same protection by the shippers.

39. Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

40. For all these reasons, the Peak Footwear Shipping Protection Fee is deceptively named and described.

41. Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on Peak's website regarding "free" shipping , and the fact that the "Peak Footwear Shipping Protection" fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would

knowingly elect to pay for the "Peak Footwear Shipping Protection" fee because it provides essentially zero additional value to consumers.

42. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee serves no purpose.

43. Worse, even in the exceedingly rare case when a consumer chooses to make a claim—as above, such claims are exceedingly rare because of the numerous other self-help methods described above and also because most consumers do not even know they have "protection"—Peak works to make it difficult or impossible for consumers to actually recover anything from those claims, creating numerous obstacles for consumers.

## IV. **<u>Defendant's Fees are Junk Fees and Violate Federal Guidance</u>**

44. Under federal law, this practice is called a "negative option", which is "'an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.'" 16 C.F.R. § 310.2(w). The negative options are routinely found to violate federal laws, including the Restore Online Shoppers' Confidence Act ("ROSCA").

45. Defendant's Peak Footwear Shipping Protection fees are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, October 11, 2023, *available at:* https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

46. In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") amending it to make "drip pricing," illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." See California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf . As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

47. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures in Digital Advertising at ii, 14 (Mar. 2013), available at

https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

48. Defendant violates federal guidance and California law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

## V. Plaintiff's Experience

49. During the relevant time period, Plaintiff purchased shoes from the Peak website.

50. When using the website, Plaintiff was expressly informed that she would get free shipping as part of her purchase.

51. However, her purchase included a $4.95 charge for a "Peak Footwear Shipping Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

52. The "Peak Footwear Shipping Protection" fee was especially less valuable because on information and belief, the same protection is already provided by Peak and the third-party shipper for the first $100 of value of the goods.

53. Plaintiff did not know the charge existed or could be removed prior to her purchase.

54. Plaintiff would not have purchased Shipping Protection if she knew it was optional.

## CLASS ALLEGATIONS

55. Plaintiff brings this action on behalf of herself, and all other similarly situated persons. The proposed Nationwide Class is defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a Peak Footwear Shipping Protection fee or other similar fee for a service provided by Peak.

56. Plaintiff also brings this action on behalf of a subclass of the above-defined Nationwide Class consisting of consumers residing in Arkansas ("Arkansas Subclass").

57. Unless otherwise noted, the Nationwide Class and Arkansas Subclass are collectively referenced herein as the "Class".

58. Excluded from the Class are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

59. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

60. **Numerosity (Rule 23(a)(1)).** The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other business records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

61. **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members

because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

b. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

c. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

d. Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

e. Whether Defendant was unjustly enriched;

f. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

62. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein.

63. **Adequacy.** Plaintiff is a more than adequate representative of the Class in that Plaintiff is Defendant's customer and has suffered damages as a result of Defendant's misrepresentations. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in

the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

64. **Predominance & Superiority (Rule 23(b)(3)).** Common questions of fact or law concerning Peak's liability to all class members for charging shipping protection fees on transactions that didn't give class members any appreciable benefit would predominate over any questions affecting only individual class members. Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual class members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

65. **Final Declaratory or Injunctive Relief (Rule 23(b)(2))**. Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

66. **Particular Issues (Rule 23(c)(4)).** Plaintiff satisfies the requirements for

maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

**FIRST CLAIM FOR RELIEF**
**Violation of Arkansas Deceptive Trade Practices Act ("ADTPA")**
**(ARK Code Ann. § 4-88-191, et seq.)**
**(On Behalf of Plaintiff and the Arkansas Subclass)**

67. Plaintiff hereby incorporates by reference the preceding paragraphs.

68. The ADTPA is designed to protect consumers from deceptive, unfair, and unconscionable trade practices. The ADTPA is a remedial statute which is to be liberally construed in favor of consumers.

69. Peak's wrongful actions as described throughout this complaint violate the ADTPA, specifically A.C.A. § 4-88-107(a)(10).

70. As detailed herein, Peak has violated A.C.A. § 4-88-107(a)(10) by unfairly, unconscionably, and deceptively adding shipping protection fees toward the end of a transaction while promising free shipping for goods purchased on the Peak website.

71. Specifically, Peak made misleading representations to Arkansas consumers that they would receive free shipping for shoes and merchandise purchased on the Peak website and omitted the material fact that the Peak Footwear Shipping Protection fee would be deceptively added to Arkansas consumers' online shopping carts on the Peak website.

72. Plaintiff and the Arkansas Subclass relied on Defendant's misleading and deceptive free shipping representations.

73. As a result, Plaintiff and members of the Arkansas Subclass have suffered actual financial loss proximately caused by Defendant's unlawful conduct. Plaintiff and other members of the Arkansas Subclass suffered actual financial loss proximately caused by reliance on

Defendant's unlawful conduct.

74. Accordingly, Plaintiff and the members of the Arkansas Subclass are entitled to recover their damages, attorneys' fees, and costs pursuant to A.C.A. § 4-88-113.

75. Plaintiff Tolbert and members of the Arkansas Subclass are also entitled to punitive damages. Peak knew or should have known that its conduct would result in injury to Plaintiff and members of the Arkansas Subclass.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Violation of Delaware Consumer Fraud Act**
**6 DEL. C. § 2513**
**(On Behalf of Plaintiff and the Class)**

76. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

77. The Delaware Consumer Fraud Act ("DCFA") is a consumer protection statute that prohibits, among other things, deceptive, fraudulent, misrepresentations, suppression, or unfair practices concerning a material fact in connection with the sale or advertisement of any merchandise. 6 Del. C. § 2513(a)

78. Under the DCFA, it is not necessary for a person to have actually been misled, deceived, or damaged by the proscribed unlawful practices described within the DCFA. *Id.*

79. Defendant's conduct described herein violates the DFCA by misrepresenting to Plaintiff and the proposed class of consumers that they would receive free shipping for shoes and merchandise purchased on the Peak website and omitted the material fact that the Peak Footwear Shipping Protection fee would be deceptively and subsequently added to consumers' online shopping carts on the Peak website as a pre-selected negative option.

80. As a result, Plaintiff and members of the Class have suffered actual financial loss proximately caused by Defendant's unlawful conduct. Plaintiff and other members of the Class

suffered actual financial loss proximately caused by reliance on Defendant's unlawful conduct.

81. Accordingly, Plaintiff and the members of the Class are entitled to recover their damages, attorneys' fees, and costs pursuant under the DCFA .

## THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

82. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

83. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

84. Plaintiff and the Class conferred a benefit on Defendant.

85. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

86. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

87. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes demands a jury trial on all claims so triable and judgment as follows:

(a) Certifying the proposed Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as class counsel for the proposed Class;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest at the maximum rate permitted by applicable law; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: October 5, 2026

*/s/Christopher D. Jennings*
Christopher D. Jennings
(AR Bar No.: 2006306)
JENNINGS & EARLEY, PLLC
500 President Clinton Ave., Ste. 110
Little Rock, AR 72201
501-255-8569
chris@jefirm.com

Sophia G. Gold*
sgold@kalielgold.com
Amanda J. Rosenberg*
arosenberg@kalielgold.com
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

*Pro Hac Vice Applications Forthcoming

*Attorneys for Plaintiff and the Classes*